354 F.3d 1036
 J. Richard WAGNER and Kristin Schwall, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees/Cross-Appellants,
v.
PROFESSIONAL ENGINEERS IN CALIFORNIA GOVERNMENT, Defendant-Appellant/Cross-Appellee, and
Kathleen Connell, State Controller, in her official capacity only, Defendant.
 No. 02-16397.
 No. 02-16461.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 2003.
 Filed January 14, 2004.
 
 COPYRIGHT MATERIAL OMITTED Jeffrey B. Demain, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, CA, for the defendant-appellant/cross-appellee.
 Mark J. Beutler, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for the plaintiffs-appellees/cross-appellants.
 Appeals from the United States District Court for the Eastern District of California; Garland E. Burrell, District Judge, Presiding. D.C. No. CV-99-01692-GEB.
 Before: GRABER, WARDLAW, and CLIFTON, Circuit Judges.
 GRABER, Circuit Judge.
 
 
 1
 Defendant Professional Engineers in California Government ("PECG") is the exclusive bargaining agent for a unit of California state employees and has entered into a collective-bargaining agreement with the state. The agreement contains a union security clause. Plaintiffs are engineers who are members of the bargaining unit but nonmembers of PECG. As such, they are obligated to pay "fair-share" fees.
 
 
 2
 Plaintiffs allege (1) that PECG failed to provide proper notice to fee payers as required by Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), and (2) that PECG improperly categorized certain activities as representational. With respect to the first claim, PECG concedes that the 1999 notice was defective. We hold that the proper remedy for a defective notice is issuance of a proper notice with a renewed opportunity for objection. We also hold that Plaintiffs are judicially estopped from pursuing their second claim.
 
 OVERVIEW
 
 3
 A union that represents employees in a collective-bargaining unit has a legal obligation to represent equally all employees in the bargaining unit, whether or not they are members of the union. In Lucas v. NLRB, 333 F.3d 927, 931-32 (9th Cir.2003), we explained: The Supreme Court has long recognized that a union has a statutory duty of fair representation under the [National Labor Relations Act ("NLRA")]. See Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Although the Act does not explicitly articulate this duty, the Court has held that the duty is implied from "the grant under § 9(a) of the NLRA, 29 U.S.C. § 159(a) (1982 ed.), of the union's exclusive power to represent all employees in a particular bargaining unit." Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 87, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). In Breininger, the Court reasoned that this authority to represent all employees necessarily included the obligation to do so in a non-discriminatory manner. See id. at 79, 87-88, 110 S.Ct. 424.
 
 
 4
 Because all employees benefit from the union's representation, the Supreme Court has held that nonmembers constitutionally may be compelled to contribute their pro rata share of the costs incurred in obtaining the benefits of representation. Abood v. Detroit Bd. of Educ., 431 U.S. 209, 221-23, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). As our court has recognized: "It is settled law that a union may charge nonunion employees certain fees to pay for their `fair share' of the union's cost of negotiating and administering a collective bargaining agreement." Cummings v. Connell, 316 F.3d 886, 888 (9th Cir.), cert. denied, 539 U.S. 927, 123 S.Ct. 2577, 156 L.Ed.2d 604 (2003).
 
 
 5
 The collective-bargaining agreement between PECG and the state contains a union security clause, which requires non-members to pay fees for the union's representational activities. These fees commonly are known as "fair share" or "agency" fees. Under the First Amendment, however, a fee payer has a right to decide whether to pay for political and expressive activities that are unrelated to collective bargaining. Hudson, 475 U.S. at 301-02, 106 S.Ct. 1066 ("[N]onunion employees do have a constitutional right to `prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative.'" (quoting Abood, 431 U.S. at 234, 97 S.Ct. 1782)). California law also entitles a non-union member to a refund, upon request, of the portion of the fair-share fee that is not related to the union's representational activities. Cal. Gov't Code § 3515.8. Thus, although a union may charge fee payers the full equivalent of union dues, a fee payer may object to paying for nonrepresentational expenses. The expenditures that a union may not charge if a fee payer objects are commonly called "nonchargeable" expenditures.
 
 
 6
 To facilitate fee payers' First Amendment choice, the union must provide fee payers with "an adequate explanation of the basis for the fee." Hudson, 475 U.S. at 310, 106 S.Ct. 1066. This explanation is referred to as a "Hudson notice." In the Hudson notice, each major category of expenditures is classified as chargeable, nonchargeable, or partly chargeable to objecting fee payers. Those classifications are referred to as the union's "chargeability determinations."
 
 
 7
 The union also must provide to nonmembers an opportunity to object to paying for nonchargeable expenditures, as well as an opportunity to challenge before an impartial decisionmaker the union's calculation of the amount of the fair-share fee. Id.
 
 
 8
 This appeal concerns two kinds of claims: (1) that the Hudson notice was defective, so that fee payers could not make an informed decision whether to object, and (2) that certain chargeability determinations were improper.
 
 FACTUAL AND PROCEDURAL HISTORY
 
 9
 PECG is the exclusive representative of employees in State Bargaining Unit 9. In March 1999, PECG issued a Hudson notice to about 1,700 fee payers. The notice classified as chargeable a number of expenditures, including expenditures under the headings "Legislative Activity Related to Collective Bargaining," "Initiatives," and "Legislation/Political Action."
 
 
 10
 In response to the Hudson notice, 33 nonmember fee payers objected to paying the full fair-share fee, and they objected to the classification of the expenditures in the three foregoing categories as chargeable. The objectors filed this action in July 1999. More than two years later, the district court certified a class consisting of all individuals who, at any time between April 1 and October 31, 1999, were California state employees in the bargaining unit represented by PECG, were not members of PECG, and had fair-share fees deducted from their pay.
 
 
 11
 In response to a series of motions for summary adjudication, the district court eventually held that (1) the March 1999 Hudson notice was insufficient as a matter of law because it contained unaudited financial information,[1] and (2) PECG had failed to show how any of the challenged expenditures was germane to collective-bargaining activity. The district court therefore granted Plaintiffs' motion for summary judgment. The court also awarded nominal damages and compensatory damages to each member of the class.
 
 
 12
 PECG brought this timely appeal, and Plaintiffs timely cross-appealed.
 
 STANDARDS OF REVIEW
 
 13
 We review de novo a district court's decision on summary judgment. Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1175 (9th Cir.2002). We also review de novo a district court's decision to grant or deny declaratory relief. DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd., 268 F.3d 829, 840 (9th Cir.2001).
 
 
 14
 We review for abuse of discretion a district court's decision to grant class certification. Cummings, 316 F.3d at 895. Likewise, we review for abuse of discretion the question whether the district court properly applied the doctrine of judicial estoppel to the facts. Broussard v. Univ. of Cal., 192 F.3d 1252, 1255 (9th Cir.1999).
 
 DISCUSSION
 I. APPEAL
 
 15
 A. The remedy for PECG's defective Hudson notice is a new, proper notice with a renewed opportunity to object.
 
 
 16
 As noted, the Supreme Court has established certain safeguards in connection with the collection of fair-share fees, including "an adequate explanation of the basis for the fee." Hudson, 475 U.S. at 310, 106 S.Ct. 1066. PECG does not appeal the district court's determination that the Hudson notice it provided in March 1999 was inadequate to explain the basis for the fee.
 
 
 17
 The question naturally arises, then, what is the appropriate remedy for issuance of a defective Hudson notice? PECG argues that the remedy for a bad notice is a good notice, resulting in a new opportunity to object and obtain a refund of the nonchargeable portion of the fee (with interest), while Plaintiffs argue that a bad notice invalidates the collection of any nonchargeable amounts for the period covered by the notice, resulting in a refund of all such amounts to fee payers. For the two reasons that follow, we agree with PECG.
 
 
 18
 First, we consider the function of a Hudson notice and the kind of harm that arises from issuance of an inadequate notice. "The purpose of the Hudson notice is to provide fee payers with adequate information so that they may decide whether to object or to challenge the Union's calculation." Cummings, 316 F.3d at 895 (citing Hudson, 475 U.S. at 306, 106 S.Ct. 1066). An inadequate notice gives fee payers insufficient information with which to decide whether or not to object to paying portions of the fee that are unrelated to representational activities. A new, conforming notice, with a renewed opportunity for fee payers to object to paying nonchargeable amounts, addresses that harm. Following a new, conforming notice, fee payers could object, and objectors would be entitled to a refund of the nonchargeable portion of the fee, with interest.[2]
 
 
 19
 By contrast, an automatic refund to every fee payer would violate a fundamental principle announced by the Supreme Court: that dissent on the part of properly notified nonmembers is not to be presumed. See Mitchell v. L.A. Unified Sch. Dist., 963 F.2d 258, 260 (9th Cir.1992) ("`[D]issent is not presumed — it must affirmatively be made known to the union by the dissenting employee.'") (quoting Int'l Ass'n of Machinists v. Street, 367 U.S. 740, 744, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961)). As explained in Hudson, "the nonunion employee has the burden of objection." 475 U.S. at 309, 106 S.Ct. 1066. It would be illogical to refund all nonchargeable amounts upon holding that a Hudson notice was defective, because no nonmember would have had the opportunity to object to or — under an equally protected right under the First Amendment — agree to pay the nonchargeable expenses.
 
 
 20
 The second reason for our conclusion is our case law. In Cummings, a public-sector union had issued defective Hudson notices, but then issued a proper notice. Nonmember fee payers sued the union. The objectors sought damages, claiming that the union could not "`unring the bell' by providing a correct notice thirteen months after it began deducting fees and that a refund of the nonchargeable portion is the minimum permitted by our caselaw." Cummings, 316 F.3d at 894. We disagreed, relying on the rules that apply to private-sector unions that must issue Hudson-similar notices. We observed that, "[i]f a [notice pursuant to Communications Workers of America v. Beck, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), the private-sector equivalent to Hudson,] is defective, the union must send a corrected notice, and issue retroactive refunds, with interest, to fee payers who object to the corrected notice." Id. We noted that the union eventually issued a proper Hudson notice and gave the nonmembers a renewed opportunity to object. In that circumstance we "fail[ed] to see how plaintiffs suffered any compensable harm (aside from nominal damages) from the initial defective notice." Id. at 895. Thus, we held that the nonmembers who did not object to the proper notice that was finally issued were not entitled to compensatory damages, even in the amount of the nonchargeable portion of the fee. Id. Cummings thus stands for the proposition that, because the injury that fee payers suffer from an inadequate Hudson notice is the lack of an informed opportunity to object, the proper remedy is for the union to issue proper notice and give another opportunity for objection.
 
 
 21
 The Cummings panel was careful to note the district court's finding that the union in that case had acted in good faith. Id. In this case, similarly, there has been no showing of bad faith on the part of PECG.
 
 
 22
 The remedy ordered in Cummings for a public-sector notice is in line with the remedies established for inadequate private-sector notices. In NLRB v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), the Supreme Court approved of an arrangement in which a private employer's workers could decline to join the union, but remain employed, without running afoul of a union security agreement. This arrangement has come to be termed an "agency shop." Id. at 735, 83 S.Ct. 1453. In Beck, 487 U.S. at 745, 108 S.Ct. 2641, the Supreme Court held that, under a private employer's agency shop agreement, employees who do not wish to become members of the union must pay only those fees related to collective bargaining, contract administration, and grievance adjustment. See also Brian J. Woldow, The NLRB'S (Slowly) Developing Beck Jurisprudence: Defending a Right in a Politicized Agency, 52 Admin. L.Rev. 1075, 1077 (2000). Private employers must issue a Beck notice, which is very similar to a Hudson notice, to fee-paying nonunion members. Rochester Mfg. Co., 323 N.L.R.B. 260, 262, 1997 WL 113885 (1997), aff'd mem. sub nom. Cecil v. NLRB, 194 F.3d 1311 (6th Cir.1999) (unpublished disposition), cert. denied, 529 U.S. 1066, 120 S.Ct. 1671, 146 L.Ed.2d 481 (2000).
 
 
 23
 The Cummings remedy also accords with that of United Food & Commercial Workers Union, Local 1036 v. NLRB, 307 F.3d 760, 774 n. 21 (9th Cir.2002) (en banc), reinstating relevant portion of panel opinion, 249 F.3d 1115, 1120 (9th Cir.2001). In that case, the en banc court reinstated a portion of the three-judge panel's opinion that had held that the proper remedy for a defective private-sector notice was to reissue a proper notice to those who had received the defective notice, to give those nonmembers an opportunity to submit objections nunc pro tunc, and to rebate the nonchargeable portions of the fee to all objecting fee payers. Id.
 
 
 24
 Plaintiffs urge us to hold that the proper remedy for a constitutionally inadequate Hudson notice is the refund of the entire nonchargeable portion of the fees. They rely on Prescott v. County of El Dorado, 177 F.3d 1102 (9th Cir.1999) (Prescott I), vacated and remanded on other grounds, 528 U.S. 1111, 120 S.Ct. 929, 145 L.Ed.2d 807, reinstated in relevant part, 204 F.3d 984 (9th Cir.2000) (Prescott II).
 
 
 25
 In Prescott I, we rejected a fee payer's argument that the remedy for a defective Hudson notice was a total refund of all collected fees. See Prescott I, 177 F.3d at 1109 ("Prescott asserts that he must simply be given full restitution of all amounts collected from him, even though it must of necessity be true that some substantial portion of the fee was used for properly chargeable purposes. With that extreme position we do not agree."). Rather, we remanded the case to the district court, explaining that
 
 
 26
 all disputed fees ... must be deposited into an interest bearing escrow account. The district court must then determine just what is chargeable and what is not. However, full restitution of the fees is not required if, as we think will surely be the case, at least some portion will be allocated to properly chargeable expenses.
 
 
 27
 Id. at 1113.
 
 
 28
 Out of context, this passage from Prescott I might be interpreted to stand for the proposition that the proper remedy for an improper notice is the return of the nonchargeable amounts to all fee payers, including nonmembers who did not object. The Tenth Circuit applies such a rule. See Wessel v. City of Albuquerque, 299 F.3d 1186, 1194-95 (10th Cir.2002) ("A union's violation of procedural requirements for the collection of fair share fees ... entitle[s] nonmembers to ... a refund of the portion of the amounts collected that exceed what could be properly charged."). In context, Prescott I cannot be read to stand for such a sweeping proposition.
 
 
 29
 Unlike this appeal, in which Plaintiffs represent a class of all nonmembers, including nonobjectors, Prescott involved a request by five individual plaintiffs for "a preliminary injunction restraining the [employer] and the union from collecting any fees from plaintiffs, or otherwise enforcing the agency shop arrangement, until a constitutionally adequate notice has been provided and constitutionally adequate procedures are in place and operating." Prescott v. County of El Dorado, 915 F.Supp. 1080, 1084 (E.D.Cal.1996); see also Prescott I, 177 F.3d at 1104 n. 2. Prescott did not involve a mixed class including both objectors and nonobjectors: Having sued the union, the five plaintiffs in Prescott can hardly be said to be presumed not to object. Accordingly, we did not reach the issue whether the union must issue refunds to all nonmembers, even to those who did not object. Nor did we have occasion to determine whether, after a calculation of properly chargeable expenditures has been made, the proper remedy would be to require the union to issue a new, proper Hudson notice to give fee payers a new, informed opportunity to object. Prescott therefore is not inconsistent with Cummings and Local 1036.
 
 
 30
 Plaintiffs also point out that the rule that objection cannot be presumed, and that the burden to object is on the nonmember, is often discussed as attaching only upon provision of proper notice. See, e.g., Cummings, 316 F.3d at 894 ("Ordinarily, if there is a proper Hudson notice, the employee has the burden to object to paying the full nonmember fee, and only then is entitled to a refund of the nonchargeable portion of the fee."). This principle makes sense, for it would be unfair to require a nonmember to object when the nonmember has, as a matter of law, not been adequately informed of the facts. But Plaintiffs' proposed rule — that dissent could be presumed, as a protection to uninformed nonmembers — would fail to respect the fee payers' First Amendment rights as running both ways. The fundamental right at issue is the right to be informed before making a choice whether to pay for non-chargeable expenditures; to honor that right, proper Hudson notice is required. "Basic considerations of fairness, as well as concern for the First Amendment rights at stake, ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee." Hudson, 475 U.S. at 306, 106 S.Ct. 1066.
 
 
 31
 To summarize, the district court erred in awarding damages as a remedy for PECG's improper Hudson notice. The proper remedy is an order requiring PECG to issue a proper notice, with a renewed opportunity for nonmembers to object to paying the nonchargeable portion of the fee, and to receive a refund, with interest, of that amount.[3]
 
 
 32
 B. Plaintiffs are judicially estopped from reviving the chargeability claim that they disclaimed earlier in the litigation.[4]
 
 
 33
 The district court granted summary judgment to Plaintiffs on the chargeability issue. We hold that the district court erred in reaching the merits of that claim, because Plaintiffs were judicially estopped from pursuing it.
 
 1. Judicial Estoppel Generally
 
 34
 "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir.1996). Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990) (internal quotation marks omitted). Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion. Helfand v. Gerson, 105 F.3d 530, 535 (9th Cir.1997).
 
 2. Plaintiffs took the position before the district court that they were not pursuing a "chargeability" claim.
 
 35
 Plaintiffs filed a brief before the district court in support of their motion for a preliminary injunction. In that brief, Plaintiffs argued, among other things, that PECG's Hudson notice was legally deficient because it improperly classified certain expenditures as "chargeable." PECG filed a counterclaim, alleging that Plaintiffs had failed to exhaust their state-mandated remedies with respect to a challenge to the amount of the fair-share fee. See Cal. Code Regs. tit. 8, § 32994 ("If an agency fee payer disagrees with the exclusive representative's determination of the agency fee amount, that employee ... may file an agency fee objection. Such agency fee objection shall be filed with the exclusive representative. An agency fee objector may file an unfair practice charge that challenges the amount of the agency fee; however, no complaint shall issue until the agency fee objector has first exhausted the exclusive representative's Agency Fee Appeal Procedure. No objector shall be required to exhaust the Agency Fee Appeal Procedure where it is insufficient on its face.").[5]
 
 
 36
 In a response, Plaintiffs moved to dismiss the counterclaim. They argued that the foregoing regulation "do[es] not require exhaustion of PECG's appeal procedures before the Non-members may file a § 1983 lawsuit. The Regulations require exhaustion only before an individual may file a State unfair labor practice charge." They made the same assertion in the section of their Reply to Defendant PECG's Opposition to Plaintiffs' Motion to Dismiss PECG's Counterclaim that related directly to the exhaustion requirement.
 
 
 37
 In addition to arguing that California's exhaustion requirement does not apply to § 1983 litigation, Plaintiffs made an alternative claim. They contended that, if the regulation applied to § 1983 litigation, exhaustion still was not required because they were not "challeng[ing] the amount of the agency fee." Cal.Code Regs. tit. 8, § 32994(a). Plaintiffs asserted strenuously that PECG had misunderstood their claim:
 
 
 38
 II. This Lawsuit Alleges That the Defendants' Procedures Are Inadequate, And Therefore the Defendants May Not Take One Penny from the Non-members
 
 
 39
 PECG clearly does not understand the Non-members' allegations. The Non-members repeat yet again that they challenge the constitutionality of the Defendants' procedures in taking "fair share fees." The Non-members allege that PECG and Defendant Connell[6] have not complied with the procedures that are Constitutionally required under [Hudson], for the taking of any fees. Put another way, the Non-members allege that neither PECG nor Ms. Connell has any right to take one cent from the Non-members, because the Constitutional procedural requirements have not been complied with. The Non-members do not allege that the fee is simply too high. The Non-members do allege that the Defendants' procedures for taking the fee are constitutionally inadequate.
 
 
 40
 The implication here is even if the regulations do require exhaustion of PECG's internal appeals process before a § 1983 action against the fee may be filed, the regulations do not bar this action. The regulations require exhaustion when the fee payer challenges the amount of the fee. The regulations do not require a fee payer to exhaust the union's appeal procedure "where it is insufficient on its face." § 32994(a). Here, the Non-members allege that PECG's procedures for taking "fair share fees" are insufficient under [Hudson].
 
 
 41
 Although the Non Members explained this in their Memorandum supporting their Motion to Dismiss, PECG has failed to respond. Thus, PECG's Counter-claim should be dismissed.
 
 
 42
 The district court granted Plaintiffs' motion to dismiss the nonexhaustion counterclaim in an order filed on November 8, 1999. The district court recited, and then relied on, Plaintiffs' second argument, that is, the argument that the exhaustion-of-remedies regulation does not apply "to parties bringing a Hudson notice challenge, as opposed to a challenge to the amount of the fair share fee." (Emphasis added.)
 
 
 43
 The dissent argues that the district court's November 8, 1999, order demonstrates that Plaintiffs did not, in fact, disavow a chargeability claim. With respect, we believe that the order cannot fairly be read that way.
 
 
 44
 The district court clearly separated the Hudson informational issue from the Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), chargeability issue and chided Plaintiffs for conflating the two. The court explained: "Plaintiffs['] argument here conflates PECG's notice compliance under Hudson with a determination as to whether expenses are properly chargeable." The district court continued, in a footnote:
 
 
 45
 Although Plaintiffs concede in their Reply to Plaintiffs' Motion to Dismiss PECG's Counterclaim that 8 Cal.Code Regs. § 32994(a) requires exhaustion of administrative remedies prior to a nonmembers' challenge to the amount of the fair share fee, they improperly attempt to combine their notice challenge with a challenge to their fair share fees in this motion.
 
 
 46
 The district court thus understood what the dissent refuses to acknowledge: there is no such thing as a "Hudson chargeability claim." As the district court correctly noted, we have previously held that there is a
 
 
 47
 clear distinction between the adequacy of a union's notice addressed by the Supreme Court in Hudson, and the propriety of a union's chargeability determinations, considered separately by the Supreme Court in Lehnert....
 
 
 48
 We agree with the Sixth[7] and Seventh[8] Circuits that at the notice stage, we do not decide whether expenses are properly chargeable.
 
 
 49
 Knight v. Kenai Peninsula Borough Sch. Dist., 131 F.3d 807, 813-14 (9th Cir.1997).
 
 
 50
 In view of our holding in Knight, as a matter of definition it cannot be, as the dissent claims, that "Plaintiffs were challenging both the informational deficiencies and the inclusion of inappropriate charges as violations of Hudson." Dissent at 1055. Hudson governs the adequacy of information, while Lehnert governs chargeability. There is a procedure for challenging the amount of the fees, but this procedure is not encompassed in a Hudson challenge.
 
 
 51
 After separating the two types of claims, the district court turned to the question whether Plaintiffs were pursuing a chargeability claim. In the section of the November 8, 1999, order entitled "Exhaustion of Administrative Remedies," the district court noted that PECG's counterclaim asserted that Plaintiffs were required to exhaust their state administrative remedies before filing the present action insofar as it challenged chargeability. The district court held that "for the reasons stated below ..., these sections are not implicated by this action and therefore Plaintiffs are not required to first exhaust their administrative remedies before bringing this lawsuit." As we have observed, the reasons stated "below" were that "Plaintiffs assert that [the California regulation requiring exhaustion of administrative remedies] is inapplicable to parties bringing a Hudson notice challenge, as opposed to a challenge to the amount of the fair share fee." (Emphasis added.) The district court continued: "Plaintiffs assert they challenge PECG's actions for failure to comply with Hudson, not because of questions involving the propriety of the fee determination. Thus, in light of Plaintiffs' assertion, it does not appear that the exhaustion requirement of Section 32994(a) applies to this action."
 
 
 52
 To recap, the district court understood Plaintiffs to be bringing only a Hudson challenge. The district court also understood that Plaintiffs wished their Hudson challenge to include a "chargeability" component, but properly rebuked Plaintiffs for trying to conflate Hudson claims with chargeability claims in contravention of our holding in Knight. Having deemed this conflation improper, the district court went on to note that the California code section requiring administrative exhaustion was not implicated because of Plaintiffs' assertion that "they challenge PECG's actions for failure to comply with Hudson, not because of questions involving the propriety of the fee determination." What was left at the end of this analysis, then, was only a Hudson challenge, devoid of any improper chargeability component.
 
 
 53
 In its November 8, 1999, order, the district court repeated and relied on Plaintiffs' assertion that they were not bringing a chargeability claim separate from their Hudson claim. Plaintiffs might have prevailed had they brought a chargeability claim and continued to argue (as the dissent contends) that a § 1983 action is not subject to the exhaustion requirement. That was Plaintiffs' original argument, but in the end they chose a different path.[9] Ultimately the district court did not need to decide whether the exhaustion requirement applied because, as it recognized, Plaintiffs were bringing only a Hudson claim. Plaintiffs abandoned, and the district court in its November 8, 1999, order understood them to have abandoned, any separate chargeability claim.
 
 
 54
 Even if Plaintiffs abandoned their chargeability claim as a result of a mistaken belief that they could pursue chargeability issues as part of their Hudson claim, judicial estoppel applies. The district court plainly apprised them in the November 8, 1999, order of the proper analysis, and they did not seek reconsideration due to a purported mistake.[10]
 
 
 55
 Having demonstrated that Plaintiffs abandoned the chargeability claim, we turn next to the question whether they sought an advantage by reviving that claim. Plaintiffs won dismissal of the nonexhaustion counterclaim on the basis of their contention that they were challenging only the informational deficiencies of PECG's Hudson notice. Later, however, in their third summary judgment motion, Plaintiffs argued that the Hudson notice was deficient because, among other things, it misclassified some expenditures as "chargeable" when they were in fact "clearly nonchargeable." That is, Plaintiffs argued that the fair-share fees surviving nonmembers' objections were too high because they included amounts that were unrelated to representational activities. The district court chose to reach the merits of this chargeability claim, despite its earlier reliance on Plaintiffs' abandonment of such a claim in resolving the state administrative remedies issue. This decision on the merits of Plaintiffs' newly revived chargeability claim was therefore inconsistent with the district court's carefully considered November 8, 1999, order.
 
 
 56
 Plaintiffs gained an advantage by initially taking the position that they were not litigating the chargeability claim. In order for their action to survive PECG's nonexhaustion counterclaim, Plaintiffs had to persuade the district court that they were not required to exhaust their state administrative remedies. Plaintiffs accomplished this aim by abandoning any chargeability claim. The district court therefore never ruled on the question whether a party bringing a § 1983 action must first exhaust state administrative remedies, because Plaintiffs' assertion that they had abandoned a chargeability claim rendered the question irrelevant. Plaintiffs gained the concrete advantage of having the district court dismiss PECG's nonexhaustion counterclaim.
 
 
 57
 Plaintiffs then sought a second advantage by taking the incompatible position that they were pursuing a chargeability claim. The district court's decision to reach the merits of the chargeability claim revived the relevance of the counterclaim. But the district court reached the merits of the chargeability claim without ever deciding whether Plaintiffs were required, as a matter of law, to exhaust their state administrative remedies before litigating a chargeability claim and, if so, whether they had exhausted those remedies.
 
 
 58
 By first taking the position that they were not litigating a chargeability claim, and later litigating a chargeability claim, Plaintiffs gained the advantage of never having to persuade the district court that they were not obliged to exhaust their state remedies or that they had done so. The district court abused its discretion, because it permitted Plaintiffs to enjoy the advantage that came with abandonment of the chargeability claims (that is, continuation of the action), and then permitted Plaintiffs to enjoy the advantage of the incompatible position that Plaintiffs were in fact litigating a chargeability claim (that is, a decision on the merits of the claim). Allowing this change of position unfairly prejudiced PECG, because the district court avoided deciding the exhaustion issue raised in the counterclaim, but then allowed Plaintiffs to enjoy a determination of their revived chargeability claim on the merits.
 
 
 59
 Plaintiffs argue nonetheless that judicial estoppel should not apply here for three reasons, which we will consider in turn.
 
 a. Different Remedies
 
 60
 Plaintiffs argue, first, that even if they did take inconsistent positions for strategic purposes, judicial estoppel would have no practical effect in this case. Plaintiffs explain that they brought two claims: (1) a Hudson claim that notice was defective due to nonconforming work performed by an auditor on the financial statements accompanying the notice, and (2) the chargeability claim. Plaintiffs argue that the "first and second claims are alternative claims. They provide the same relief."
 
 
 61
 Plaintiffs are wrong, because the remedies for the two claims are not the same. The remedy for a defective notice is the issuance of proper notice with a renewed opportunity to object. The remedy for overcharging is a refund of improperly charged fees.
 
 b. Inconsistent Positions
 
 62
 Plaintiffs next argue that they did not give up their chargeability claim. They point particularly to this sentence in their Reply: "The nonmembers do not allege that the fee is simply too high." Plaintiffs parse the sentence closely, claiming that the word "simply" means that Plaintiffs were alleging that the fee was too high, but that their claims went beyond that lone defect.
 
 
 63
 Although that reading may be consistent with basic grammar,[11] the context surrounding the statement makes Plaintiffs' present claim untenable. The thrust of PECG's counterclaim was that Plaintiffs' chargeability claim had not been properly exhausted under state law. The counterclaim, therefore, sought the dismissal of that claim only. A statement that there was some other portion of Plaintiffs' case that did not involve the chargeability claim would have been nonresponsive to the counterclaim. The district court quite naturally and obviously understood Plaintiffs' declaration to mean that they were not pursuing a chargeability claim.
 
 c. Federal Rule of Civil Procedure 23(e)
 
 64
 Finally, Plaintiffs argue that they were incapable of engaging in behavior giving rise to estoppel on the chargeability issue as a matter of law, because Federal Rule of Civil Procedure 23(e) "precludes class members from compromising claims of class members without a fairness hearing." This argument is unavailing. Rule 23(e) relates to the "dismissal or compromise" of a class action. The estoppel here has nothing to do with the dismissal or compromise of Plaintiffs' claims. Instead, the question is the initial scope of Plaintiffs' complaint, as Plaintiffs well understood when they stated in their Reply that "PECG clearly does not understand the Non-members' allegations."
 
 3. Conclusion
 
 65
 Plaintiffs took a position before the district court that their litigation was grounded solely in a challenge to PECG's Hudson notice, but did not include a chargeability claim. They took that position to gain an advantage in the litigation. Later, they sought (and won) summary judgment on the chargeability claim. This change in position is precisely the kind of "playing fast and loose with the courts" that the judicial estoppel doctrine is designed to prevent. Russell, 893 F.2d at 1037 (internal quotation marks omitted).
 
 
 66
 Having dismissed the nonexhaustion counterclaim based on Plaintiffs' representation that chargeability was not at issue, the district court abused its discretion in later granting partial summary judgment on the merits of Plaintiffs' resurrected chargeability claim. The district court abused its discretion because, if the amount of the fee was at issue, Plaintiffs had to exhaust "the exclusive representative's Agency Fee Appeal Procedure," Cal. Code Regs. tit. 8, § 32994(a), or convince the court that the exhaustion requirement did not apply, and the court did not find that Plaintiffs had done either before reaching the merits of the chargeability claim.[12]
 
 II. CROSS-APPEAL
 
 67
 A. The district court did not abuse its discretion in denying Plaintiffs' request for injunctive relief.
 
 
 68
 Plaintiffs sought an injunction enjoining the collection of fees until compliance with Hudson was achieved. The district court denied that relief.
 
 
 69
 Plaintiffs' claims that the district court abused its discretion do not satisfy the "strong showing of abuse" needed to reverse a district court's denial of injunctive relief. See United States v. Laerdal Mfg. Corp., 73 F.3d 852, 854 (9th Cir.1995). Plaintiffs' only live claim in this litigation is that the Hudson notice was inadequate. A conclusion that the issuance of a proper notice, followed by an opportunity to object and receive a refund, with interest, of the nonchargeable portion of the fee, would compensate Plaintiffs was a permissible one. See Cummings, 316 F.3d at 895 ("In this case, the nonmembers all eventually received notices with sufficient information under Hudson, and a renewed opportunity to object and receive their money back with interest. We fail to see how plaintiffs suffered any compensable harm (aside from nominal damages) from the initial defective notice."); Local 1036, 249 F.3d at 1120 ("Reimbursement is due only those employees who received the letter and object.").
 
 
 70
 B. The district court did not abuse its discretion in refusing to issue a declaratory judgment that California Government Code § 3515.8 is unconstitutional as applied.
 
 
 71
 Plaintiff Schwall argues that the district court's refusal to issue a declaratory judgment holding that California Government Code § 3515.8[13] was unconstitutional as applied to him (because it allegedly forced him to subsidize the union's political activities) was error. In its April 23, 2002, order, the district court explained:
 
 
 72
 Plaintiffs have not persuasively argued why they need declaratory relief in this case.... [There is no] need to determine whether California Government Code Section 3515.8 was applied in an unconstitutional manner to Plaintiffs because application of that statute has not been shown to be the reason PECG violated Plaintiffs' First Amendment rights. Plaintiffs' rights were violated because PECG misperceived its obligations under federal law....
 
 
 73
 The district court's reasoning was sound; Plaintiffs' right to receive proper notice and to object was vindicated under federal law, so it would have been superfluous to address the state claim. The court's refusal to issue a declaratory judgment did not constitute an abuse of discretion.
 
 
 74
 C. The district court did not err in limiting the class definition and the relief to a seven-month period between March and October 1999.
 
 
 75
 Plaintiffs' first two complaints in this action were based on PECG's March 1999 Hudson notice. When PECG issued an amended notice in October 1999, the March 1999 notice ceased to have any effect because it had been replaced by the new amended notice. If there were a defect in the October 1999 notice, it had to be alleged separately; the October 1999 notice was not identical to the March 1999 notice.[14] Plaintiffs were not obliged to challenge the new notice, whose contents they could not know when they filed suit three months before it was issued, and the district court therefore properly relied on Plaintiffs' express challenge to the March 1999 notice alone. This very circumstance is the reason why Federal Rule of Civil Procedure 15(d) exists. See Keith v. Volpe, 858 F.2d 467, 471 (9th Cir.1988) (stating that "Fed.R.Civ.P. 15(d) ... is designed to permit expansion of the scope of existing litigation to include events that occur after the filing of the original complaint").
 
 
 76
 On November 29, 1999, Plaintiffs represented in a Joint Status Report that neither party anticipated amending the pleadings. The district court then issued a scheduling order, which provided that "[n]o further joinder of parties or amendments to pleadings is permitted except with leave of Court, good cause having been shown." Plaintiffs did not object to the order. Six months later, they moved for leave to file a second amended complaint, which was intended, in part, to "update the facts including allegations that two additional ... Notices [did] not satisfy Hudson." The court denied the motion, explaining that "Plaintiffs['] failure to focus on the Rule 16 good cause standard in their amendment motion is fatal."
 
 
 77
 Plaintiffs argue here that, although the district court did not err in refusing to permit amendment of the complaint to address the amended notice, the district court did err by construing the complaint unreasonably. Plaintiffs claim that the district court was unreasonable when it "eliminated" liability for the period after the October 1999 notice was issued. In other words, Plaintiffs' argument is that the two accepted complaints include claims regarding the October 1999 notice, despite the facts that the two filed complaints referred only to the March 1999 notice and that the (rejected) second amended complaint sought to "update the facts including allegations" of deficiencies in the October 1999 notice.
 
 
 78
 Federal Rule of Civil Procedure 15(d) requires a party to obtain leave of the court to "serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Plaintiffs recognized the applicability of that rule and, thus, the limitation on the claims asserted in the First Amended Complaint, when they sought, unsuccessfully, to amend the complaint to include post-October 1999 allegations. The district court did not err in construing the complaint as limited to the period from March through October 1999.
 
 CONCLUSION
 
 79
 The proper relief for PECG's concededly defective Hudson notice is for the district court to order the prompt issuance of a proper Hudson notice, with a renewed opportunity for fee payers to object and, if they object in a timely fashion, to receive refunds of the nonchargeable portion of the fee, with interest. Plaintiffs are judicially estopped from pursuing their chargeability claim. Plaintiffs' cross-appeal is denied.
 
 
 80
 AFFIRMED in part, REVERSED and REMANDED in part. Costs on appeal awarded to Defendant.
 
 
 
 Notes:
 
 
 [1]
 PECG does not appeal the ruling that itsHudson notice was inadequate.
 
 
 [2]
 The fee payers will have an opportunity to object to the chargeability of disputed items once they receive a properHudson notice. An inadequate notice, by definition, gives fee payers inadequate information from which to decide whether to object and, if so, in what particulars. After fee payers receive proper and complete information, they can make a fully informed choice for the first time.
 
 
 [3]
 At oral argument, PECG conceded that the items identified in the March 1999 notice as "Category 41" are not chargeable. PECG is judicially bound by this concession and its futureHudson notices must accurately so reflect. See Amberhill Props. v. City of Berkeley, 814 F.2d 1340, 1341 (9th Cir.1987) (concession at oral argument is binding in further proceedings).
 
 
 [4]
 Generally, before an argument will be considered on appeal, "the argument must be raised sufficiently for the trial court to rule on it."Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1186 n. 4 (9th Cir.1997) (internal quotation marks omitted). PECG objected in the district court to Plaintiffs' change in position. In its July 10, 2000, Opposition to Plaintiff's First Motion for Summary Judgment, PECG argued that Plaintiffs improperly had changed their position on whether the chargeability issue was in the litigation. In its September 11, 2000, Opposition to Plaintiff's Motion for Partial Summary Judgment, PECG again argued that Plaintiffs had taken the position that the chargeability issue was not being pursued, and that Plaintiffs had improperly changed their position on that question. PECG therefore preserved the issue of judicial estoppel.
 
 
 [5]
 Plaintiffs do not argue that the Agency Fee Appeal Procedure is insufficient on its face
 
 
 [6]
 Kathleen Connell was the State Controller of California when the inadequateHudson notice was given and is a named defendant in this action.
 
 
 [7]
 The Sixth Circuit case cited inKnight explained that, "[a]t the outset, we disagree with plaintiffs' premise that the constitutional validity of a notice is contingent upon the accuracy of the chargeability determinations within the notice." Jibson v. Mich. Educ. Ass'n-NEA, 30 F.3d 723, 730 (6th Cir.1994).
 
 
 [8]
 The Seventh Circuit case held:
 [P]laintiffs' challenge mistakenly equates the adequacy of the notice with the accuracy of the fee assessment, and thus squarely contradicts Hudson's holding and rationale. Contrary to the plaintiffs' position, Hudson did not contemplate that federal courts would be required, on the basis of the notice, to pass on the legality and accuracy of every element of the fee calculation before any fees could be collected. Were we to accept plaintiffs' invitation and provide a hearing and judicial determination of the correctness of the fee, we would in effect render redundant and irrelevant the requirements that an impartial decision-maker hear the dispute and that an escrow account be provided for the amounts reasonably in dispute while the challenge is pending. The proper procedure employs each of the three prerequisites identified by the Supreme Court: the fair share notice provides the basis for a challenge to the fair share fee assessment; the impartial decisionmaker determines the correctness of the fee amount; and the escrow protects the challenger's funds pending such a decision. The Supreme Court's prerequisites presuppose that a fee has already been collected and that the challenge will be decided after the fee has been collected. The federal court does not, at this stage, review the fee calculation. Indeed, the Supreme Court noted, "[i]n other First Amendment contexts, of course, we have required swift judicial review of the challenged government action. In this context, we do not believe that such special judicial procedures are necessary." [Hudson,] 475 U.S. at 307 n. 20, 106 S.Ct. 1066. Of course, the impartial decisionmaker's determination is not the final word on the challenge. If the decision is adverse to the plaintiffs, they may subsequently seek review by a federal court. See id. at 308 n. 21, 106 S.Ct. 1066. The singular role of the federal courts in reviewing the adequacy of a fair share notice is to determine whether the notice gives the nonunion members enough information to challenge the basis for the fee. See id. at 306, 106 S.Ct. 1066 (holding that the notice procedure must provide potential objectors "sufficient information to gauge the propriety of the union's fee").
 Hudson v. Chi. Teachers Union, Local No. 1, 922 F.2d 1306, 1314 (7th Cir.1991) (some citations and internal quotation marks omitted).
 
 
 [9]
 As the district court put it, "Plaintiffs concede in their Reply to Plaintiffs' Motion to Dismiss PECG's Counterclaim that 8 Cal. Code Regs. § 32994(a) requires exhaustion of administrative remedies prior to a non-members' challenge to theamount of the fair share fee."
 
 
 [10]
 We disagree with the dissent's assertion that we are applying judicial estoppel against Plaintiffs based on a position that Plaintiffs never took before the district court. Dissent at 1055-1056 n. 2. Plaintiffs plainly took the position below that they were not pursuing a stand-alone chargeability claim
 We further disagree that our holding contradicts case law holding that taking an inconsistent position based on a misunderstanding of the law does not support an application of judicial estoppel. This is not a case in which a party's misunderstanding of the law led it to abandon a claim it did not intend to. Plaintiffs knew at all times that they could bring a stand-alone chargeability claim and chose, for strategic purposes, not to do so. Plaintiffs therefore abandoned a stand-alone chargeability claim and chose to continue to abandon that claim even after they were apprised by the district court's order that a stand-alone claim was the only chargeability challenge cognizable at law. Plaintiffs decided to bring a stand-alone chargeability claim only after they had enjoyed the benefits of their abandonment below. This strategic decision, made with a correct understanding of the operable law, is properly subject to application of judicial estoppel, and is not in tension with either of the cases cited by the dissent. Cf. Johnson v. Oregon, 141 F.3d 1361, 1368 (9th Cir.1998) ("Finally, we note that judicial estoppel is an equitable doctrine, invoked by a court at its own discretion, and driven by the specific facts of a case.").
 
 
 [11]
 To have the meaning that Plaintiffs ascribe to it, the sentence properly would read: "The nonmembers do not allege simply that the fee is too high." That is, the "simply" in Plaintiffs' Reply modifies "too high," rather than "allege."
 
 
 [12]
 Because we hold that the district court should not have decided the chargeability claim, we do not reach PECG's arguments on the merits, and we express no view on the merits of the chargeability issuesBut see note 3, above.
 
 
 [13]
 California Government Code § 3515.8 reads:
 Any state employee who pays a fair share fee shall have the right to demand and receive from the recognized employee organization, under procedures established by the recognized employee organization, a return of any part of that fee paid by him or her which represents the employee's additional pro rata share of expenditures by the recognized employee organization that is either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment, or applied towards the cost of any other benefits available only to members of the recognized employee organization. The pro rata share subject to refund shall not reflect, however, the costs of support of lobbying activities designed to foster policy goals and collective negotiations and contract administration, or to secure for the employees represented advantages in wages, hours, and other conditions of employment in addition to those secured through meeting and conferring with the state employer. The board may compel the recognized employee organization to return that portion of a fair share fee which the board may determine to be subject to refund under the provisions of this section.
 
 
 [14]
 The October 1999 notice states: "This Notice To Fee Payers was produced in March 1999 and amended in October 1999." One notable amendment is that the March 1999 notice states: "Therefore, your fees were initially established for 1999 at $32.50 per month, which is $2.00 less per month than full membership dues." The October notice contains the same text, but then continues: "This is to inform you that for November 1999 through March 2000, your fees will increase $18.84 per month, based on a dues increase of $20 per month for a period of five months."
 
 
 
 81
 CLIFTON, Circuit Judge, concurring in part and dissenting in part:
 
 
 82
 I respectfully dissent with regard to the majority's conclusions (1) that the district court erred in reaching the chargeability issue (section I.B. of the Discussion in the majority opinion), and (2) that the district court did not err in limiting the class definition and relief to the seven-month period spanning March through October, 1999 (section II.C.). I concur in the remainder of the majority opinion.
 
 I. CHARGEABILITY
 
 83
 The district court granted summary judgment for Plaintiffs on their claim that Categories 24 (Legislative Activity Related to Collective Bargaining), 29 (Initiatives), and 41 (Legislative Political Action) were nonchargeable, ruling that PECG had "fail[ed] to show how any of the challenged expenditures are germane to collective bargaining activity." The majority reverses this ruling based not on the merits, but on the doctrine of judicial estoppel. It does so even though it is beyond dispute that at least part of Plaintiffs' claim is valid and meritorious, as PECG now concedes that Category 41 was non-chargeable. See ante at 1043-1044 n. 3. To reverse the district court and require the dismissal of an indisputably valid claim is surely extraordinary. It is also, in the context of this case, both inefficient and wrong.
 
 
 84
 The majority correctly recognizes that judicial estoppel is intended to preclude a party from taking inconsistent positions to its advantage. Ante at 1044. The Supreme Court has stated that "a party's later position must be `clearly inconsistent' with its earlier position." New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Plaintiffs' pursuit of the chargeability claim was not inconsistent, much less "clearly inconsistent," with the position they took in litigating PECG's counterclaim.
 
 
 85
 The majority states that "Plaintiffs gained an advantage by initially taking the position that they were not litigating the chargeability claim ... [i]n order for their action to survive PECG's nonexhaustion counterclaim.... Plaintiffs then sought a second advantage by taking the incompatible position that they were pursuing a chargeability claim." Ante at 1048 (emphasis in original). This reflects a fundamental misunderstanding of Plaintiffs' claims. Plaintiffs at no time took the position "that they were not litigating the chargeability claim." Plaintiffs did challenge chargeability in the context of a Hudson violation. Plaintiffs' claims all along were that the notice was procedurally deficient under Hudson for two reasons: (1) it had not been audited as required by Hudson, and (2) it violated Hudson by classifying "clearly nonchargeable" expenses as chargeable.
 
 
 86
 Plaintiffs consistently challenged chargeability in the form of that second claim throughout the litigation. In the First Amended Verified Complaint, Plaintiffs alleged that PECG, by including "clearly nonchargeable" expenditures in the agency fee, "failed to adopt procedures which ensure that the fee is lawful, as required by Hudson." In their brief for a preliminary injunction, Plaintiffs argued that "a union violates Hudson when its procedures are so inadequate that objecting non-members are charged for expenditures that have clearly and repeatedly been held non-chargeable." In their brief supporting their motion for partial summary judgment, Plaintiffs wrote, "It remains the Plaintiffs' position that PECG's inclusion of clearly nonchargeable categories of expenditures in chargeable expense totals reflected in the Notices violated the requirements of Hudson ...." The district court understood that, both at the time of granting summary judgment to Plaintiffs on their claim that the expenditures within Categories 24, 29, and 41 were not properly chargeable, and, as will be illustrated below, at the time of granting Plaintiffs' motion to dismiss the PECG nonexhaustion counterclaim.
 
 
 87
 Plaintiffs' asserted grounds for dismissal of PECG's counterclaim were not inconsistent with their chargeability claim. PECG's counterclaim sought a declaratory judgment which, in effect, called for dismissal of Plaintiffs' claims for failure to exhaust internal union remedies under Cal. Code Regs. tit. 8, § 32994.[1] Plaintiff responded with alternative arguments. One was that the state regulation did not require exhaustion of PECG's internal appeal procedures before a § 1983 lawsuit could be filed, because the state regulation by its terms only required exhaustion before the filing of a state unfair practice charge, not a § 1983 claim. A variant of that argument was that if the California regulation did apply to require exhaustion of state or union remedies before a § 1983 action could be filed, that requirement was unconstitutional. Plaintiffs also argued that because PECG's procedures for taking fair-share fees from non-members was insufficient under Hudson, Plaintiffs' lawsuit qualified for the exception to the exhaustion requirement set forth in the last sentence of the regulation in question, which provides that exhaustion of the Agency Fee Appeal Procedure is not required when the union's appeal procedure "is insufficient on its face." Cal.Code Regs. tit. 8, § 32994(a).
 
 
 88
 These arguments might not have all been meritorious, but that does not matter at this point.[2] What does matter is that Plaintiffs' position was not, as the majority asserts, "that they were not litigating the chargeability claim." Ante at 1048. Plaintiffs' argument regarding the exception contained in the last sentence of § 32994(a) appears to have left that impression with the majority, but read carefully and in conjunction with the other arguments made by Plaintiffs to the district court at the same time, it is clear that Plaintiffs had not abandoned their chargeability claim. They were not "challenging only the informational deficiencies of PECG's Hudson notice." Ante at 1048 (emphasis in majority opinion). Simply put, Plaintiffs were challenging both the informational deficiencies and the inclusion of inappropriate charges as violations of Hudson. Plaintiffs did not view the two contentions as mutually exclusive. They repeatedly asserted that PECG had violated the Hudson requirements in both ways.
 
 
 89
 The majority's assertion that "[t]he district court ... understood Plaintiffs' declaration to mean that they were not pursuing a chargeability claim," ante at 1049, is simply erroneous. The district court unquestionably knew that Plaintiffs were making such a claim. In the district court's order of November 8, 1999 which granted Plaintiffs' motion to dismiss PECG's counterclaim — the point at which, according to the majority, the district court was led by Plaintiffs to believe that Plaintiffs were not pursuing a chargeability claim — the district court also denied a motion by Plaintiffs for a preliminary injunction. In the portion of the order discussing the preliminary injunction motion, the district court described one of Plaintiffs' claims as follows: "Plaintiffs argue that PECG violated Hudson by charging nonmembers for clearly non-chargeable expenditures." The district court went on to conclude that Plaintiffs had not demonstrated a likelihood of success on that claim sufficient to support a preliminary injunction, but the fact of that discussion — contained in the very same order which dismissed the PECG nonexhaustion counterclaim — makes obvious that it was simply not true that Plaintiffs had led the district court to believe that Plaintiffs, in the words of the majority, "were not pursuing a chargeability claim." The district court's order itself said that Plaintiffs were making that claim.
 
 
 90
 The district court, in dismissing PECG's counterclaim, offered the following discussion and description of Plaintiffs' position:
 
 
 91
 PECG asserts that [§ 32994] sets forth "a mandatory procedure for persons who wish to challenge the determination of fair share fees." ... Plaintiffs assert they challenge PECG's actions for failure to comply with Hudson, not because of questions involving the propriety of the fee determination.... Thus, in light of Plaintiffs' assertion, it does not appear that the exhaustion requirement of Section 32994(a) applies to this action.
 
 
 92
 Plaintiffs won dismissal of the counterclaim not because they "disclaimed" the chargeability claim, ante at 1044, but because the district court accepted their position that the exhaustion required under § 32994(a) did not apply to their § 1983 claim that PECG had not complied with Hudson.[3] That is consistent with the words of the statute, which require exhaustion of the union's fee appeal process before an unfair practice charge complaint will be issued for an "agency fee objection." The statute does not say anything about exhaustion being required before a lawsuit can be filed in federal court complaining of a constitutional violation.[4] Since the very same order said just a few pages earlier that "Plaintiffs argue that PECG violated Hudson by charging nonmembers for clearly non-chargeable expenditures," it is plain that the district court understood Plaintiffs' Hudson claim to include the chargeability contention.
 
 
 93
 The majority's misunderstanding of Plaintiffs' position causes it to apply judicial estoppel where there should be none. Not only have Plaintiffs maintained a consistent position throughout this litigation, but they would not "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808. It is not as if PECG lost on the merits of the chargeability issue without having been afforded an opportunity to defend its position. PECG had the opportunity to, and did, defend the chargeability of Categories 24, 29, and 41 in its opposition to Plaintiffs' motion for partial summary judgment. The district court simply ruled against that position. PECG has suffered no "unfair detriment," and Plaintiffs have obtained no "unfair advantage," so as to warrant judicial estoppel of the chargeability claim.
 
 
 94
 Nor is judicial estoppel required to prevent Plaintiffs from "`playing fast and loose with the courts.'" Ante at 1044 (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)). Indeed, it is anomalous for the majority to hold — especially under an abuse of discretion standard, see ante at 1040 — that the decision of the district court must be reversed because the district court itself was abused by being "play[ed] fast and loose with." The district court surely knows better than we do how Plaintiffs' prior position affected the district court's own ruling on the motion to dismiss the counterclaim. The district court's awareness of Plaintiffs' chargeability claim was explicitly demonstrated in the same order in which the PECG counterclaim was dismissed. Nevertheless, the majority today informs the district court that it was so misled by Plaintiffs' position that its later consideration of Plaintiffs' chargeability claim constituted an abuse of discretion — even though the district court was persuaded to grant summary judgment to Plaintiffs on that claim, and even though that claim is, at this point, conceded by PECG to be at least partially valid, as to Category 41 expenditures. I do not agree. With respect, it appears to me that it is the majority, not the district court, that has misunderstood.
 
 
 95
 On a pragmatic level, the majority's holding regarding the chargeability claim simply promotes inefficiency. The majority's remedy is "an order requiring PECG to issue a proper notice, with a renewed opportunity for nonmembers to object to paying the nonchargeable portion of the fee, and to receive a refund, with interest, of that amount." Ante at 1043. Because PECG has conceded that items in Category 41 were non-chargeable, Plaintiffs and other fee payers will be entitled, upon timely objection, to obtain a refund for the portion of the fee related to Category 41. See ante at 1043-1044 & n. 3. As to the other categories, when Plaintiffs respond to the new notice by objecting to the chargeability of items in Categories 24 and 29, then PECG will presumably defend the chargeability of those items, and that difference will be litigated. But that difference has already been litigated, and the district court already granted Plaintiffs' motion for partial summary judgment, concluding that Categories 24 and 29 were not properly chargeable. The majority's application of judicial estoppel to reverse that holding simply means that the parties will be forced to litigate the chargeability of items in those categories anew. I see no reason to require litigation over that subject all over again.
 
 II. SEVEN-MONTH PERIOD
 
 96
 I also disagree with the majority's conclusion that the district court did not err by limiting the class definition and the relief to the seven-month period spanning March through October 1999. There is no dispute that the March 1999 notice was inadequate. The October 1999 notice contained the same defects as the March 1999 notice. PECG does not even try to argue at this point that it satisfied the constitutional requirements set forth in Hudson by issuing the October 1999 notice. PECG should not succeed in cutting off liability by issuance of an equally defective notice.
 
 
 97
 The constitutional wrong is the taking of the agency fees absent compliance with Hudson's requirements. That violation did not end in October 1999. Plaintiffs did not simply complain about the creation or delivery of a bad notice in March 1999. They complained about the constitutional wrong — that agency fees have been taken from them without compliance with the requirements identified in Hudson — and that wrong continued beyond October 1999. Delivery of another defective notice did not right that wrong.
 
 
 98
 Nothing in the First Amended Verified Complaint temporally limits Plaintiffs' claims. To the contrary, Plaintiffs' allegations suggest continuing liability. Plaintiffs proposed for the class to include all nonmembers who had "fair share fees" seized from their pay "at any time since April 1, 1999," and sought to enjoin PECG "from seizing any fees until they establish a procedure in full compliance with Hudson's and Abood's requirements." (Emphases added.) No allegation indicated that their claims were limited to the March 1999 notice or that liability could be cut off by issuance of another defective notice. Had PECG never issued the October 1999 notice, Plaintiffs would not have been subject to the seven-month limit. The issuance of an equally defective notice should not cut off liability when the issuance of no notice would not have done so.
 
 
 99
 The majority notes that Plaintiffs represented in a Joint Status Report after issuance of the October 1999 notice that they did not anticipate amending the pleadings, and that Plaintiffs accepted the provision of the district court's Rule 16 scheduling order stating that no amendments would be permitted without leave of court. But Plaintiffs' representation that they did not anticipate amending their complaint is fully consistent with their current position that no amendment was necessary. Because they believed that no amendment was necessary, they had no reason to indicate that they anticipated amending their complaint.
 
 
 100
 Nor does Plaintiffs' subsequent attempt to file a Second Amended Complaint to "update the facts including allegations" of post-October 1999 notice liability mean that amendment was necessary as a matter of law.) The fact that Plaintiffs attempted to amend their complaint is simply not very probative of the purely legal question of whether the complaint was limited to a seven-month period. Plaintiffs may well have sought to add additional allegations in an abundance of caution. Prudence in lawyering should not be held against Plaintiffs.
 
 
 101
 Finally, I disagree with the majority's conclusion that Rule 15(d) serves to cut off liability after October 1999. The problem with the majority's conclusion is that Rule 15(d) is relevant only if one assumes that a supplemental pleading was required to extend liability past October 1999. The majority's reasoning is therefore circular: it assumes what it sets out to prove. As explained above, I do not read the First Amended Verified Complaint as limiting liability to a seven-month period; on the contrary, it suggests an intent to impose liability until PECG issues a procedurally proper notice. The October 1999 notice was not procedurally proper. I would therefore reverse the district court's seven-month limitation on the class definition and relief and remand for further appropriate proceedings.
 
 
 102
 The practical impact of this portion of the majority's decision depends upon what other alternatives might be available to Plaintiffs and other fee payers for obtaining relief for the time period after the October 1999 notice was sent. The door appears to be closed in this lawsuit, however, despite the facts that (1) the October 1999 notice was just as defective as the March 1999 notice had been, and (2) at least some of the charges imposed by PECG (i.e., Category 41) were improper. To require Plaintiffs to go elsewhere to obtain relief is, at best, wasteful and inefficient. If it turns out that relief cannot be obtained elsewhere, then this decision is unjust, as well.
 
 
 
 Notes:
 
 
 [1]
 Cal.Code Regs. tit. 8, § 32994(a) provides as follows:
 If an agency fee payer disagrees with the exclusive representative's determination of the agency fee amount, that employee (hereinafter known as an "agency fee objector") may file an agency fee objection. Such agency fee objection shall be filed with the exclusive representative. An agency fee objector may file an unfair practice charge that challenges the amount of the agency fee; however, no complaint shall issue until the agency fee objector has first exhausted the exclusive representative's Agency Fee Appeal Procedure. No objector shall be required to exhaust the Agency Fee Appeal Procedure where it is insufficient on its face.
 
 
 [2]
 Contrary to the majority's assertions, I do not challenge the conclusion that, legally speaking, there may be "no such thing as aHudson chargeability claim." Ante at 1046. Indeed, Plaintiffs' argument in the alternative that if § 32994(a) does apply to the § 1983 claim, then the Hudson chargeability claim falls under § 32994(a)'s insufficiency exception, might very well be legally incorrect. The district court's conclusion that this argument "conflates PECG's notice compliance under Hudson with a determination as to whether expenses are properly chargeable" only establishes that Plaintiffs have advanced a legally deficient argument. At the end of the day, however, the viability of Plaintiffs' argument is immaterial to the question of whether the doctrine of judicial estoppel should apply. The district court's order clearly demonstrates that Plaintiffs have consistently asserted a chargeability claim. The fact that they might have incorrectly placed that chargeability claim under the auspices of a Hudson claim is irrelevant.
 The majority states that even if Plaintiffs advanced a "chargeability claim as a result of a mistaken belief that they could pursue chargeability issues as part of their Hudson claim," "judicial estoppel applies" because the "district court plainly apprised them in the November 8, 1999, order of the proper analysis, and they did not seek reconsideration due to a purported mistake." Ante at 1047. In effect, the majority has assigned to Plaintiffs a position which Plaintiffs themselves clearly did not take-"abandonment" of the chargeability claim-and then applied the doctrine of judicial estoppel against Plaintiffs because Plaintiffs did not remain faithful to a position which they never took for themselves. The majority offers no legal support from this court or any others for this proposition. Why Plaintiffs made the legal decision not to seek reconsideration and advance a perhaps more meritorious position is neither here nor there. All that is important for our purposes is whether Plaintiffs initially argued a consistent chargeability claim in a prior legal proceeding, which they clearly did. Moreover, the majority's stance on this issue is in tension with Ninth Circuit precedent that recognizes an exception to the judicial estoppel doctrine where a party advances a good faith, though legally incorrect position and later alters its position in subsequent litigation. See, e.g., Johnson v. State of Oregon, 141 F.3d 1361, 1369 (9th Cir.1998) ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply."); Stevens Tech. Servs., Inc. v. SS Brooklyn, 885 F.2d 584, 589 (9th Cir.1989) (judicial estoppel not applied where prior inconsistent statement based on a party's goodfaith but wrong position as to its rights). Given that prior inconsistent and incorrect positions advanced in good faith are excused under Ninth Circuit precedent on judicial estoppel, it would be puzzling to now hold that prior consistent, though incorrect, positions advanced in good faith must be estopped.
 
 
 [3]
 The district court quoted the following portion of Plaintiffs' reply brief in justifying its conclusion: "The regulations require exhaustion when the fee payer challenges the amount of the fee.... Here, the Non-members allege that PECG'sprocedures for taking "fair share fees" are insufficient under [Hudson.]." Interestingly, this part of Plaintiffs' reply brief was in support of its alternative position that assuming that § 32994(a) applies, its insufficiency exception also applies under Hudson. Though it appears from this that the district court was not fully cognizant of the nuances of Plaintiffs' position, its order nonetheless establishes that Plaintiffs' consistently, though perhaps erroneously, advanced a chargeability claim.
 
 
 [4]
 The majority opinion simply assumes that Plaintiffs were required to exhaust the union's fee appeal process, in concluding that the district court abused its discretion in considering the merits of Plaintiffs' chargeability claimAnte at 1049. That disregards the words of the statute. It also disregards Plaintiffs' seemingly persuasive argument that exhaustion of state administrative remedies is not a prerequisite to an action under § 1983. See Patsy v. Board of Regents of Florida, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); see also Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 875, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998); Knight v. Kenai Peninsula Borough School Dist., 131 F.3d 807, 816 (9th Cir.1997).