BAY INSTITUTE OF SAN FRANCIS-
CO, et al., Plaintiffs—Appellants,

and

San Luis & Delta–Mendota Water
Authority, et al., Plaintiffs–
Appellees,

v.

UNITED STATES of America, et
al., Defendants—Appellees,

v.

Pixley Irrigation District, et al.,
Plaintiff–Intervenors.

San Luis & Delta–Mendota Water
Authority, et al., Plaintiffs—
Appellants,

and

Bay Institute Of San Francisco,
et al., Plaintiffs—Appellees,

v.

United States of America, et al.,
Defendants—Appellees,

v.

Pixley Irrigation District, et al.,
Plaintiffs -Intervenors.

Nos. 02–16041, 02–16045.
D.C. Nos. CV–97–06140–OWW,
CV–98–05261–OWW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 2003.

Decided June 3, 2003.

Before CANBY, KLEINFELD, and
RAWLINSON, Circuit Judges.

MEMORANDUM *

This case involves the administration by
the Department of the Interior ("Interior")

* This disposition is not appropriate for publica- tion and may not be cited to or by the courts

of water in California's Central Valley Project (the "Project"). Appellants San Luis & Delta–Mendota Water Authority, et al., and Bay Institute of San Francisco, et al., appeal from a final partial judgment issued by the district court pursuant to Fed. R.Civ.P. 54(b).

The parties filed cross-motions for summary judgment challenging the accounting methodology used by Interior in implementing Section 3406(b)(2) of the Central Valley Project Improvement Act ("Improvement Act"). The district court severed the accounting issues from the rest of the case and issued a final partial judgment on the accounting issues pursuant to Rule 54(b).

The district court's partial judgment is final for purposes of appeal. *See Franklin v. Fox,* 312 F.3d 423, 429 n. 2 (9th Cir. 2002).

1. The district court correctly concluded that Section 3406(b)(2) does not require Interior to calculate the cost of water actions taken pursuant to § 3406(b)(2) against a hypothetical model of Project operations during the 1928–1934 drought period. Section 3406(b)(2) unambiguously requires only calculation of Project yield by determining the delivery capability of the Project during the specified drought period.

2. The district court also correctly concluded that Interior may not exclude from its calculation of Project yield certain water flows implemented in connection with the Auburn Dam. Section 3406(b)(2) requires Interior to exclude from its Project yield calculation only those "flow and operational requirements imposed by terms and conditions existing in licenses, permits, and other agreements ..." The record reflects no such license, permit or other

agreement concerning the Auburn Dam flows.

3. The district court correctly prohibited Interior from using offset/reset matrices in accounting for use of water under § 3406(b)(2), to impermissibly alter the 800,000 acre feet designated by Congress.

4. The district court correctly found that the Improvement Act does not prohibit Interior from reusing water initially released for (b)(2) purposes. Because the Improvement Act does not specifically address reuse, Interior's reasonable interpretation of the statute is entitled to deference. *See Wilderness Society v. United States Fish and Wildlife Serv.,* 316 F.3d 913, 921–22 (9th Cir.2003).

5. The district court erred in concluding that Interior lacks discretion to specify what portion of the 800,000 acre feet of Project yield set aside in Section 3406(b)(2) may be used for water quality and Endangered Species Act purposes. Section 3406(b)(2) provides that the "primary purpose" to which the 800,000 acre feet should be dedicated is the implementation of "fish, wildlife, and habitat restoration purposes authorized by this title ..." Section 3406(b)(2) also provides that the 800,000 acre feet may be used to "help" meet obligations under the Endangered Species Act and to "assist" in meeting water quality standards. The non-mandatory language of the statute gives Interior discretion to allocate the 800,000 acre feet among fish and wildlife, water quality, and endangered species obligations, as long as Interior's allocation gives effect to the hierarchy of purposes established in Section 3406(b)(2). *See Bicycle Trails Council v. Babbitt,* 82 F.3d 1445, 1461–62 (9th Cir. 1996).

of this circuit except as provided by Ninth Circuit Rule 36–3.

AFFIRMED in part and REVERSED in part. Each party is to bear its own costs on appeal.

CANBY, Circuit Judge, concurring in part and dissenting in part.

CANBY, Circuit Judge.

I entirely agree with all parts of this memorandum with the sole exception of the paragraph numbered 3. Unlike the majority and the district court, I do not view § 3406(b) of the Act as imposing an annual maximum of 800,000 acre feet of water that the Secretary of the Interior may manage for the conservation purposes specified by that section. Section 3406(b) requires the Secretary to dedicate and manage annually 800,000 acre feet of the "yield" of the project for those purposes. In my view, it was within the discretion of the Secretary to determine that particular releases of water for conservation purposes were subject to offset or reset because they did not cause a diminution of the yield available to other users, even if the effect of such offsets or resets may result in more than 800,000 acre feet being used in a given year for the conservation purposes of § 3406(b). In all other respects I concur in this memorandum.