SAN LUIS & DELTA–MENDOTA WATER AUTHORITY, et al.,
Plaintiffs,

Save San Francisco Bay Association, et al., Plaintiffs,

Pixley Irrigation District, et al.,
Plaintiffs–in–Intervention,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,
Defendant.

Nos. 1:97–CV–6140 OWW,
1:98–CV–5261 OWW.

United States District Court,
E.D. California.

May 17, 2006.

Daniel Joseph O'Hanlon, Kronick, Mosko-vitz, Tiedemann & Girard, Sacramento, CA, Diane Rathman, Linneman Burgess Telles Van Atta Vierra Rathman Whitehurst, Dos Palos, CA, Charles M. Hungerford, Heller Ehrman White and McAuliffe LLP, Menlo Park, CA, Jeremy Friedman, Law Office of Jeremy L. Friedman, Cynthia L. Koehler, Environmental Defense Fund, Oakland, CA, for Plaintiffs.

Maria A. Iizuka, U.S. Department of Justice, Sacramento, CA, Clifford T. Lee, California Attorney General's Office, Department of Justice, San Francisco, CA, Gregory K. Wilkinson, Best Best and Krieger, Riverside, CA, Alex Marshall Peltzer, Daniel M. Dooley, Dooley Herr Carlson & Peltzer, LLP, Visalia, CA, for Defendants.

## ORDER RE MOTION TO FILE A SUPPLEMENTAL COMPLAINT (DOC. 623)

WANGER, District Judge.

### I. INTRODUCTION

Plaintiffs San Luis & Delta Mendota Water Authority and Westlands Water District joined by Plaintiff-in-intervention Stockton East Water District (collectively the "water authority plaintiffs") move for leave to file a supplemental complaint concerning Interior's accounting of the 2004 water year. (Doc. 632, Motion; Doc. 634, Joinder.) The United States Department of the Interior, et al., (the "federal defendants") oppose. (Doc. 629.) Plaintiffs in the consolidated action, the Bay Institute of San Francisco, Environmental Defense, and Save San Francisco Bay Association (collectively the "environmental plaintiffs"), also oppose. (Doc. 630.)

### II. FACTUAL BACKGROUND

This case has a long and complicated history that is set forth in great detail in several prior orders. For purposes of this motion, a review of the pertinent holdings of the district court and the Ninth Circuit, along with a summary of recent events suffices.

The water authority plaintiffs' filed their *currently operative* second amended complaint on April 5, 2001. (Doc. 395)[1] The first cause of action alleged:

26. Adoption of the Final Decision [on implementation of Section 3406(b)(2)] by interior was in excess of its statutory authority, or limitations on that authority, because:

(a) The calculation of CVP yield attached to the Final Decision is inconsistent with the definition of CVP yield contained in CVPIA section 3406(b)(2);

(b) The methodology established by the Final Decision to account for the amount of yield dedicated and managed annually pursuant to CVPIA section 3406(b)(2) is inconsistent with CVPIA section 3406(b)(2);

(c) Implementation of the potential fishery actions described in the Final Decision, when combined with other measures implemented under Section 3406(b)(2), will result in the dedication and management of CVP yield in excess of the 800,000 acre-feet maximum limit resulting in impacts to CVP contractors beyond those authorized by law;

(d) The Final Decision does not count against the 800,000 acre-feet maximum limit any water in excess of 450,000 acre-feet that is used to meet the requirements of the 1995 Delta Water Quality Control Plan (WQCP), unless the U.S. Fish & Wildlife Service makes a written finding of biological necessity.

(e) The Final Decision allows Interior to decide each year whether water that is used for purposes of complying with the requirements of the Endangered Species Act will be counted toward the 800,000 acre-feet maximum limit.

(Doc. 395 at ¶ 24–28.) The remaining claims for relief alleged: Interior's (b)(2) accounting for the October 1, 1999—September 2000 Water Year was unlawful (*Id.* at ¶¶ 29–32, Second Claim for Relief); Interior unlawfully failed to consider how its implementation of 3406(b)(2) would have affected delivery of CVP water during the 1928–1934 period (*Id.* at ¶¶ 33–35, Third Claim for Relief); Interior's implementation of Section 3406(b)(2) cre-

1. In addition to the San Luis plaintiffs' currently operative second amended complaint, on December 1, 1999, intervenor-plaintiff Stockton filed an amended complaint (Doc. 267), as did interve- nor-plaintiff Pixley (Doc. 268). Environmental plaintiffs filed an amended complaint on December 6, 1999. (Doc. 271.)

ates unreasonable uncertainty for CVP water users (*Id.* at 36–40, Fourth Claim for Relief); Interior's practice of prioritizing environmental purposes over agricultural, municipal, and industrial purposes violates Section 3402's requirement that Interior "achieve a reasonable balance among competing demands" (*Id.* ¶¶ 41–45, Fifth Claim for Relief); Interior's conclusion that the proposed fishery restoration actions adopted in the Final Decision would benefit fish, wildlife, and habitat were unsubstantiated (*Id.* at 46–50, Sixth Claim for Relief).

In May 2001, the parties filed cross-motions for summary judgment on most, but not all, of the claims raised in the complaint. Among other arguments, the water district plaintiffs moved for judgment that "The Final Decision is not in accordance with law because Interior does not count all water used to meet the requirements of the 1995 WQCP and other legal obligations imposed after enactment against the 800,000 acre-foot limit ..." (hereinafter referred to as the "failure to account" claim).

On October 19, 2001, the district court issued an order on the cross motions for summary judgment. With respect to the failure to account claim, the district court ruled that Interior had "discretion to annually determine how much CVP yield to devote to WQCP or post-CVPIA ESA requirements" but had no discretion "whether or not to count CVP yield used for such (b)(2) purposes" (i.e., all such uses must be counted):

> Section 3406(b)(2) unambiguously directs Interior to "dedicate and manage annually eight hundred thousand acre-feet of Central Valley Project yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures authorized by this title." Interior has no discretion whether to annually provide more or less than 800 TAF of CVP yield (approximately 5.99 MAF) for (b)(2) purposes, unless it makes certain findings under CVPIA § 3406(b)(2)(C) ... Interior is also directed to annually dedicate and manage the mandatory 800 TAF of CVP yield "to assist the State of California in its efforts to protect the waters of the San Francisco Bay/Sacramento–San Joaquin Delta Estuary [*i.e.*, the WQCP]; and to help to meet such obligations as may be legally imposed upon the [CVP] under State or Federal law following the date of enactment of this title, including but not limited to additional obligations under the Federal Endangered Species Act." *Id.* at 4715–16. As a matter of law, this language is not ambiguous—water used to meet WQCP or post-CVPIA ESA requirements is an additional (b)(2) purpose and *must* be charged against the 800 TAF (b)(2) mandate if so used.
>
> The CVPIA is not silent on what amount of water used for these so-called "secondary" purposes is to be credited against the 800 TAF (b)(2) mandate. (*E.g.*, could all 800 TAF of (b)(2) water be used to meet post-CVPIA-enactment ESA requirements?). Congress mandates that exactly 800 TAF of CVP yield (≈ 5.99 MAF) be dedicated for (b)(2) purposes, whether "primary" or "secondary." To hold otherwise would render the 800 TAF figure superfluous. *This leaves to Interior, the discretion to annually determine how much CVP yield to devote to WQCP or post-CVPIA ESA requirements. However, if it were left to Interior's "discretion" whether or not to count CVP yield used for such (b)(2) purposes, the annual 800 TAF cap would be illusory.* The 800,000 TAF is intended by Congress as an immutable floor and ceiling on annual reallocation of water from CVP yield for (b)(2) purposes. If Interior uses more than 800 TAF for (b)(2) purposes in any year, but does not count all CVP yield used for such purposes, it violates CVPIA § 3406(b)(2). Water-districts' motion for summary judgment on whether Interior has the discretion to limit credits against (b)(2) for water used for WQCP or post-CVPIA ESA purposes to 450 TAF is GRANTED, Interior has no such discretion. Any amount of CVP yield water annually used for a(b)(2) purpose must be counted as part of the 800 TAF. The environmental plaintiffs' motion for summary judgment on this issue is denied.

(Doc. 466 at 32–33 (emphasis added) (internal citations and footnotes omitted)). A partial judgment was entered under Fed.R.Civ.P. 54

and certified for interlocutory appeal to the Ninth Circuit.

The water authority plaintiffs, environmental plaintiffs, and federal defendants cross-appealed aspects of the district court's partial judgment to the Court of Appeals. The federal defendants later abandoned their appeal.

The Ninth Circuit issued a decision on June 3, 2003 and an amended decision on January 23, 2004. *Bay Inst. of San Francisco v. United States,* 66 Fed.Appx. 734, 735 (9th Cir.2003), affirming the district court decision in all but one respect. On the failure to account issue, the Ninth Circuit held:

> The district court erred in concluding that Interior lacks discretion to refrain from crediting the amount of Project yield actually used for any (b)(2) purpose against the designated 800,000 acre feet of Project yield. To hold otherwise would defeat the primary purpose for which the 800,000 acre feet were designated-fish, wildlife, and habitat restoration. Section 3406(b)(2) provides that the "primary purpose" to which the 800,000 acre feet should be dedicated is the implementation of "fish, wildlife, and habitat restoration purposes authorized by this title...." Section 3406(b)(2) also provides that the 800,000 acre feet may be used to "help" meet obligations under the Endangered Species Act and to "assist" in meeting water quality standards. If Interior were required to deduct some or all the water it uses for water quality and Endangered Species Act purposes from the (b)(2) dedication, the water needed for implementation of the Improvement Act's restoration mandate could be relegated to a secondary role, or perhaps no role at all. Such a scenario would directly conflict with the Interior's mandate to give effect to the hierarchy of purposes established in Section 3406(b)(2).

*Bay Inst.,* 87 Fed.Appx. at 637. The appeal is now final as no petition for certiorari was filed by any party. The balance of Plaintiffs' claims were held in abeyance pending the appeal and are technically still before the district court.

In their proposed supplemental complaint, Plaintiffs contend that Interior's accounting for (b)(2) water during the period for October 1, 2003 through September 30, 2004 (the "2004 (b)(2) Accounting Year") fails to comply with the statute as interpreted by the district court and the Ninth Circuit. Specifically, Plaintiffs contend that the quantity dedicated for (b)(2) purposes during the 2004(b)(2) Accounting Year *exceeded 800,000 acre-feet* because interior excluded from its accounting 159,200 acre feet used in *"non-(b)(2) Fishery Actions."*[2] This 159,200 acre-feet figure apparently consisted of 150,000 acre-feet in reduced CVP export pumping from the Sacramento–San Joaquin Delta for the purpose of benefitting fish, as well as 9,200 acre-feet in releases to the American and Stanislaus Rivers to meet Bay–Delta Water Quality Control Plan requirements.

## III. DISCUSSION

### A. Applicable Legal Standards.

The filing of amended and supplemental pleadings is governed by Federal Rule of Civil Procedure 15(d), which provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

The Ninth Circuit has entrusted application of this rule to the district court's broad discretion.

> Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings. The rule is a tool of judicial economy and convenience. Its use is therefore favored. As Judge Hayns-

---

**2.** The water authority plaintiffs attach to the proposed supplemental complaint a spreadsheet that purportedly records interior's accounting for the 2004(b)(2) Accounting Year. This spreadsheet indicates that 159,200 acre-feet went to "non-(b)(2) Fishery Actions."

worth observed more than two decades ago:

> Rule 15(d) of the Federal Rules of Civil Procedure provides for . . . supplemental pleading. It is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted. So useful they are and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears, though the court has the unquestioned right to impose terms upon their allowance when fairness appears to require them.
>
> . . . . The *clear weight of authority*, however, in both the cases and the commentary, permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy. . . .

*Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (internal citations omitted).

■ Leave should be "freely given," "[i]n the absence of any apparent or declared reason—such as *undue delay, bad faith* or *dilatory motive* on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (emphasis added).

■ However, supplementation may not be used "to introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402–03 (9th Cir.1997). In *Neely*, the Ninth Circuit found supplementation was inappropriate, after considering the relatedness of the initial and supplemental complaints, whether final judgment had been rendered, and whether the district court retained jurisdiction over the case:

> The supplemental complaint filed by plaintiffs involved a new and distinct action that should have been the subject of a separate suit. Although both the original suit and the supplemental complaint sought to challenge Arizona's parental consent law, the supplemental complaint challenged a *different statute* than the one that had been successfully challenged in the original suit. Additionally, a *final judgment had been rendered* in the original action four years prior to plaintiffs' request to supplement their complaint. That judgment was not appealed and in no way would be affected by plaintiffs' supplemental complaint. *Nor did the district court retain jurisdiction* after entering that order.

130 F.3d at 402 (emphasis added). The *Neely* court also considered whether the filing of a supplemental complaint would serve the interests of judicial economy:

> To determine if efficiency might be achieved, courts assess "whether the entire controversy between the parties could be settled in one action. . . ." In the case at hand there would necessarily be two actions since the original suit had been settled for some time. There were also no "technical obstacles" to plaintiffs bringing a new, separate action to challenge [the statute] as amended.

*Id.* at 402–03 (internal citations omitted).

*Neely* specifically distinguished a number of prior cases, including *Keith*, recognizing the nature of affirmative obligations previously imposed upon the defendant by those courts and that the proposed supplemental complaints in those cases alleged that the defendant violated a prior court order:

> In both *Keith* and [two other cases] the courts retained jurisdiction over later developments despite rendering final judgments. In [these] cases, the courts, as part of their final orders, required the parties to comply with broad, aspirational directives. Finally, in each of the cases, the actions of the defendants which the plaintiffs sought to challenge through supplemental pleading were alleged to be specific attempts by the defendants to contravene the courts' earlier rulings. These factors are not present in the case at hand. The district court did not retain jurisdiction nor did it enter an order guiding the parties' future affirmative duties. Further, plaintiffs did not aver that the defen-

dants were defying the court's [ ]decision enjoining them from enforcing the original parental consent statute.

*Id.* at 403.[3]

Under *Keith, Foman,* and *Neely,* the following factors were applied in deciding whether the complaint should be supplemented:

(1) The relatedness of the original and supplemental complaints;

(2) Whether allowing supplementation would serve the interests of judicial economy;

(3) Whether there is evidence of delay, bad faith or dilatory motive on the part of the movant, or evidence of repeated failure to cure deficiencies by amendments previously allowed;

(4) Whether amendment would impose undue prejudice upon the opposing party;

(5) Whether amendment would be futile;

(6) Whether final judgment had been rendered;

(7) Whether the district court retains jurisdiction over the case;

(8) Whether any prior court orders imposed a future affirmative duty upon defendant; and

(9) Whether the proposed supplemental complaint alleges that defendants defied a prior court order.

**B.  Application of the Keith/Foman/Neely Factors.**

**1.  The relationship between the original and supplemental complaints.**

■ The water authority plaintiffs suggest that the claims set forth in the proposed supplemental complaint are mere extensions of the claims of their currently operative second amended complaint (SAC). (Doc. 395.) The SAC sets forth seven causes of action, the first of which is the most relevant here:

26. Adoption of the Final Decision [on implementation of Section 3406(b)(2) ] by interior was in excess of its statutory authority, or limitations on that authority, because:

(a) The calculation of CVP yield attached to the Final Decision is inconsistent with the definition of CVP yield contained in CVPIA section 3406(b)(2);

(b) The methodology established by the Final Decision to account for the amount of yield dedicated and managed annually pursuant to CVPIA section 3406(b)(2) is inconsistent with CVPIA section 3406(b)(2);

(c) Implementation of the potential fishery actions described in the Final Decision, when combined with other measures implemented under Section 3406(b)(2), will result in the dedication and management of CVP yield in excess of the 800,000 acre-feet maximum limit resulting in impacts to CVP contractors beyond those authorized by law;

(d) The Final Decision does not count against the 800,000 acre-feet maximum limit any water in excess of 450,000 acre-feet that is used to

---

**3.** The federal defendants also cite *Wagner v. Professional Engineers in California Government,* 354 F.3d 1036 (9th Cir.2004) as an example of a case in which amendment was denied. But *Wagner* is distinguishable. The plaintiffs in *Wagner* initially represented in a joint status report to the district court that neither party anticipated amending the pleadings. The trial court issued a scheduling order, which provided that "[n]o further joinder of parties or amendments to pleadings is permitted except with leave of Court, *good cause having been shown." Id.* at 1051 (emphasis added). Six months later, the *Wagner* plaintiffs moved to amend the complaint to incorporate allegations concerning two subsequent events. The motion was denied on the ground that plaintiffs failed "to focus on the Rule 16 good cause standard in their amendment motion." *Id.* Despite this ruling, the *Wagner* plaintiffs argued that the scope of the *original* allegations was broad enough to effectively include liability for the subsequent events. The district court rejected this argument and the Ninth Circuit affirmed on the ground that plaintiffs were *unsuccessful* in their attempt to gain leave to supplement the complaint under Rule 15. *Id.* The federal defendants have failed to demonstrate why *Wagner* would control the outcome of the instant motions. Critically, here, the water authorities are under no obligation to show "good cause" for their amendment.

meet the requirements of the 1995 Delta Water Quality Control Plan (WQCP), unless the U.S. Fish & Wildlife Service makes a written finding of biological necessity.

(e) The Final Decision allows Interior to decide each year whether water that is used for purposes of complying with the requirements of the Endangered Species Act will be counted toward the 800,000 acre-feet maximum limit.

(Doc. 395 at ¶ 26.)

The proposed supplemental complaint is an as-applied challenge to Interior's implementation of (b)(2) accounting in light of the district court and Ninth Circuit's subsequent rulings on the failure to account and incorrect accounting claims. It directly challenges Interior's accounting for the 2004 Water Year, alleging that Interior specifically omitted from its annual (b)(2) accounting 150,000 acre-feet in reduced CVP export pumping from the Sacramento–San Joaquin Rivers Delta "for the purposes of benefitting fish" and 9,200 acre-feet in releases to the American and Stanislaus Rivers to meet 1995 Bay–Delta Water Quality Control Plan Requirements. The proposed supplemental complaint alleges that as a result, Interior dedicated 959,000 acre-feet of CVP water for (b)(2) purposes, 159,000 acre-feet more than the 800,000 acre-feet limit of section 3406(b)(2). The proposed complaint also impliedly challenges two management documents issued by Interior: (1) the "Department of the Interior Decision on Implementation of Section 3406(b)(2) of the Central Valley Improvement Act," issued May 9, 2003; and (2) the "Guidance for the Implementation of Section 3406(b)(2)," issued December 17, 2003, which supplements the May 9 document in light of the Ninth Circuit's subsequent rulings.

In the context of this entire litigation, the proposed supplemental complaint tests the effect and measuring of the Ninth Circuit's holding on (b)(2) accounting:

The district court erred in concluding that Interior lacks discretion to refrain from crediting the amount of Project yield actually used for any (b)(2) purpose against the designated 800,000 acre feet of Project yield. To hold otherwise would defeat the primary purpose for which the 800,000 acre feet were designated-fish, wildlife, and habitat restoration. Section 3406(b)(2) provides that the "primary purpose" to which the 800,000 acre feet should be dedicated is the implementation of "fish, wildlife, and habitat restoration purposes authorized by this title...." Section 3406(b)(2) also provides that the 800,000 acre feet may be used to "help" meet obligations under the Endangered Species Act and to "assist" in meeting water quality standards. *If Interior were required to deduct some or all the water it uses for water quality and Endangered Species Act purposes from the (b)(2) dedication, the water needed for implementation of the Improvement Act's restoration mandate could be relegated to a secondary role, or perhaps no role at all. Such a scenario would directly conflict with the Interior's mandate to give effect to the hierarchy of purposes established in Section 3406(b)(2).*

*Bay Inst.*, 87 Fed.Appx. at 637. Put another way, the water authorities' proposed supplemental complaint asks, among other things: Does Interior have the discretion to elect not to deduct water used for implementation of the CVPIA's *restoration mandate* from the designated 800,000 acre-feet? This and several related questions arguably raised by the proposed supplemental complaint are closely and directly related to the issues decided in earlier stages of this litigation. (The issues are so closely related that, if the initiation of a new case were required, the new case would likely be a related case to this case).

■ The federal defendants emphasize the "fact that the October 1999 Final Decision [challenged in the initial complaint] is now superceded entirely by the May 2003 Decision." (Doc. 629, Fed. Def't's Opp'n, at 5.) This is of little moment. Federal Rule of Civil Procedure 15(d) is "designed to permit expansion of the scope of existing litigation to include events that occur after the filing of the original complaint." *Keith,* 858 F.2d at 471. The federal defendants point to no authority that suggests amendment should be denied on such a ground.

## 2. Judicial Economy.

■ The district court has developed extensive knowledge of the relevant law, background, and scientific considerations governing the complex water accounting and CVPIA technical CVP operational requirements. Retaining the new claims as part of the existing case serves the interests of judicial economy.

Although no party disputes the practical advantages of allowing the proposed claim to proceed in this court, the federal defendants suggest that it is more appropriate to follow the Ninth Circuit's holding in *Neely*. In that case, the Ninth Circuit found that the interests of judicial economy would not be served by amendment, reasoning that:

> To determine if efficiency might be achieved, courts assess "whether the entire controversy between the parties could be settled in one action ..." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2D § 1506 (1990). In the case at hand there would necessarily be two actions since the original suit had been settled for some time. There were also no "technical obstacles" to plaintiffs bringing a new, separate action to challenge § 36–2152 as amended. See *United States v. Reiten*, 313 F.2d 673, 675 (9th Cir.1963) (stating that, "the general purpose of the Rules [regarding amended and supplemental complaints is] to minimize technical obstacles to a determination of the controversy on its merits").

*Id.* at 402–03. The federal defendants assert that, as in *Neely*, there are no "technical obstacles" here to the filing of a separate case. But the federal defendants cite *Neely* out of context. There, the original complaint challenged a particular statute as unconstitutional. The district court entered a final order declaring the statute unconstitutional and no party appealed. *Id.* at 401–02. Several years later, the State of Arizona amended and reenacted the statute in question and

the original plaintiffs filed a motion with the district court to file a supplemental complaint. *Id.* at 402. The Ninth Circuit ruled that it was an abuse of discretion for the district court to permit the filing of a supplemental complaint, because "while leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." *Id.* Here, unlike in *Neely*, there need not "necessarily be two actions." This case, which concerns the interpretation of the same statute, 3406(b)(2), is still pending, there is no final judgment that decides all claims of the complaint. The water authority plaintiffs now challenge subsequent administrative interpretations and implementation of the same statutory provision in a later water year. Supplementation for such a purpose has already been permitted in this case, when Plaintiffs challenged Interior's first revision of its (b)(2) Final Policy.

## 3. Evidence of delay, bad faith, dilatory motive, or repeated failure to cure.

■ No party argues that the proposed supplemental complaint has been lodged in bad faith or for any dilatory motive, nor has there been a repeated failure to cure. The federal defendants do argue, however that the water authority plaintiffs have delayed unreasonably the filing of their motion to supplement.

■ The 2004(b)(2) Accounting Year ended on September 30, 2004, and the Bureau's final accounting for that water year became available on December 1, 2004. The water authority plaintiffs filed no formal protest or motion to supplement the complaint until October 4, 2005, nearly a year later. The federal defendants further point out that there has been no substantive activity in this case for nearly three years. What the federal defendants have failed to establish is that this delay is unreasonable, prejudicial, or that it would warrant denial of the present motion to supplement.[4] The amended deci-

---

4. The federal defendants frame the issue as follows: "If, as the Authority avers, it will challenge the propriety of the Bureau's accounting practices for the 2004 Water Year in one forum or another, the question for the court is whether it

makes sense to prolong the present case beyond its eight-year life span." (Doc. 629–1 at 7.) But, this is not exactly the point. If it serves the interests of judicial economy to allow these claims to be brought in the present lawsuit, this

sion in the Court of Appeals was not issued until January 23, 2004. "[D]elay in and of itself is not sufficient reason to deny a motion to supplement the complaint . . ." *Bromley v. Michigan Educ. Association–NEA,* 178 F.R.D. 148, 154 (E.D.Mich.1998).

### 4. Prejudice to the opposing parties.

The federal defendants do not suggest that they would be prejudiced by the filing of the supplemental complaint. The environmental plaintiffs, however, insist that prejudice will result:

> [I]n the event that the motion is granted, environmental plaintiffs in these consolidated proceedings would become parties to disputes raised by the supplemental complaint, despite not being sued and not, at this stage of the administrative proceedings, having challenged the Interior's implementation of the CVPIA as to the 2004 Water Year. Leave would thus prejudice the rights of the environmental plaintiffs, who have a very real and important interest in bringing their action against Interior to its successful and final conclusion. The Districts should not be permitted to disturb that concluding process by filing the proposed supplemental complaint.

(Doc. 630 at 5–6.) The water authority plaintiffs do not respond directly to this contention.

As to the environmental Plaintiffs, these concerns are valid. As of the date of filing of the motion to supplement, the claims raised by the environmental plaintiff' have been concluded, except for a decision on their claimed EAJA legal fees. The proposed supplemental complaint has been submitted. If the environmental plaintiffs do not have an interest in the issues presented, a severance can be granted, removing them from this phase of the case if that is their wish.

### 5. Futility of amendment.

■ The federal defendants suggest that leave to file the proposed supplemental complaint should be denied because it fails to state a claim upon which relief may be granted. (Doc. 629 at 3–4.) The relevant inquiry

is whether amendment would be *legally futile.* A complaint may be deemed futile if it would fail to state a claim under Federal Rule of Civil Procedure, Rule 12(b)(6). *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

The federal defendants are correct that the proposed supplemental complaint sets forth allegations regarding the 2004(b)(2) Water Year in a section entitled "general allegations," rather than under a particular cause of action. In fact, the proposed complaint does not formally state any "cause of action." But, it does assert that Interior's accounting for 2004 is "arbitrary and capricious, an abuse of discretion, and not in accordance with law, within the meaning of 5 U.S.C. § 706(2)(A), and is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, within the meaning of 5 U.S.C. section 706(2)(C)." (Doc. 623–1 at ¶ 10.) This language arguably states a claim under the Administrative Procedure Act sufficient to satisfy the liberal requirements of Federal Rule of Civil Procedure 8.

The environmental plaintiffs raise a more substantive challenge to the supplemental complaint, arguing that "the excluded 159,000 acre-feet of CVP water were non-discretionary fish actions taken in 2004 to comply with the Water Quality Control Plan and the Endangered Species Act." (Doc. 630 at 4.) The environmental plaintiffs maintain that the exclusion of this water from the accounting "was necessary to ensure the higher priority of the restoration efforts, consistent with the Ninth Circuit mandate." *(Id.)*

The Ninth Circuit's opinion facially authorizes Interior to refrain from counting water used for secondary (b)(2) purposes:

> The district court erred in concluding that Interior lacks discretion to refrain from crediting the amount of Project yield actually used for any (b)(2) purpose against the designated 800,000 acre feet of Project yield. To hold otherwise would defeat the primary purpose for which the 800,000 acre feet were designated-fish, wildlife, and habitat restoration. Section 3406(b)(2) provides that the "primary purpose" to

would weigh in favor of expanding the eight year life-span of this suit.

which the 800,000 acre feet should be dedicated is the implementation of "fish, wildlife, and habitat restoration purposes authorized by this title...." Section 3406(b)(2) also provides that the 800,000 acre feet may be used to "help" meet obligations under the Endangered Species Act and to "assist" in meeting water quality standards. If Interior were required to deduct some or all the water it uses for water quality and Endangered Species Act purposes from the (b)(2) dedication, the water needed for implementation of the Improvement Act's restoration mandate could be relegated to a secondary role, or perhaps no role at all. Such a scenario would directly conflict with the Interior's mandate to give effect to the hierarchy of purposes established in Section 3406(b)(2).

*Bay Inst.,* 87 Fed.Appx. 637. But, the Ninth Circuit's ruling arguably *does not* address the discrete question the water authority plaintiffs raise in the proposed supplemental complaint: Whether Interior can classify a fish restoration action (arguably a "primary" use) as a "secondary" use simply because it was a "mandatory" action taken to ensure compliance with the Water Quality Control Plan and/or the Endangered Species Act, which allegedly emasculates the 800,000 AF maximum limit on dedication of CVP yield to (b)(2) purposes. The water authority plaintiffs contend that "Nothing in the Ninth Circuit's opinion excuses Interior from counting water used for the 'primary' fish and wildlife restoration purpose." (Doc. 632, Reply, at 4.) This is a question not considered and left unanswered by the Ninth Circuit's decision. Put another way, if Interior is free to use all CVP yield for purposes it characterizes as "secondary," the 800,000 AF limit means nothing and there is no effective annual ceiling on CVP yield use for (b)(2) purposes.

### 6. Whether the district court retains jurisdiction over the case/Whether final judgment had been rendered.

Both the federal defendants and the environmental plaintiffs assert that this case is effectively over and point out that the only

recent activity has been litigation concerning attorneys fees.[5] The water authority plaintiffs respond that, in fact, a number of claims remain outstanding:

> The *Partial* Final Judgment resolved some of the claims in this action. It resolved "the environmental plaintiffs' second claim; San Luis and Delta–Mendota Authority's first, second and third claims; Pixley Irrigation District's first and second claims; and Stockton East Water District's first and second claims." Partial Final Judgment On Accounting Issues, 2:12–15, (Docket # 491). Other claims remain. In their action, the Environmental Plaintiffs allege five claims. In this action, the Authority alleges six claims, Pixley four, and Stockton East five. (Docket # 395, 268, 267.) Accordingly, even if the Authority's motion for leave to file a supplemental complaint were denied, this action would not be over. The remaining claims would still not be resolved. The Federal Defendants' argument that this case will be over if only the Court denies this motion to file a supplemental complaint is mistaken.

(Doc. 632 at 2–3 (emphasis added).) But, no party has made any attempt to bring these dormant claims to resolution. During oral argument on the motion to supplement, the parties were given 30 days, until April 24, 2006, to either dismiss existing dormant claims or assert new claims, as necessary. Assuming that the parties will dismiss the dormant claims, this is the only factor that weighs in favor of denying the motion to supplement.

In sum, the proposed supplemental complaint is a discrete and logical extension of the original claims in this case. In addition, allowing supplementation serves the interest of judicial economy, as consuming administrative and judicial resources of the court in not having to open a new case, randomly assigning it, going through the related-case low number analysis, and initiating Rule 16 scheduling as if this were a new case, do not serve judicial economy. The federal defendants and environmental plaintiffs have failed

**5.** In a related argument, the federal defendants assert that the May 9, 2003(b)(2) accounting policy moots all claims based upon the October

1999(b)(2) policy. This argument has been rejected. *See* Part B.1 at 12–13.

to establish that any delay that has occurred is prejudicial. No other incurable prejudice has been demonstrated. The filing of the proposed supplemental complaint is not futile, as it raises at least one valid and discrete legal challenge to Interior's (b)(2) accounting practices and (b)(2) implementation in the 2004 water year.

## IV. CONCLUSION

For the reasons set forth above, the water authority plaintiffs' motion to supplement is **GRANTED**.

Notwithstanding contrary deadlines set at the hearing on the motion to supplement, the parties shall have until **May 27, 2006** to either dismiss existing dormant claims or assert new claims. Any responsive pleadings shall be filed by **June 15, 2006**. A hearing on any motions to dismiss the supplemental complaint shall be held on **July 17, 2006**, at 10:00 a.m. in Courtroom 3.